IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| **JOHN DOE,**<br><br>    *Plaintiff,*<br><br>v.<br><br>**FURMAN UNIVERSITY**,<br><br>    *Defendant*. | **COMPLAINT**<br><br>**Jury trial demanded** |

Plaintiff alleges the following against Defendant:

### PARTIES AND JURISDICTION

1. The Plaintiff, John Doe[1], is a resident of Fulton County, Georgia.

2. The Defendant, Furman University, is a private educational institution in Greenville County, South Carolina.

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises under federal law.

4. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because the state claims are closely related to the federal question at issue in this case.

5. A substantial part of the events in this case took place in this District and the Defendant resides in this District, making this the appropriate federal district for venue.

### FACTS

6. Defendant Furman University is a private university located in Greenville County, South Carolina.

7. Defendant is subject to the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688.

---

[1] A motion for the Plaintiff to proceed under a pseudonym has been filed contemporaneously with this Complaint.

8. Plaintiff graduated high school in 2023 from a private high school in Georgia.

9. Plaintiff was a decorated high school student and never got into trouble.

10. Based on his academic achievement and other accomplishments during his high school career, Plaintiff had a number of choices for college. Many of those choices involved significant or full scholarships.

11. Plaintiff's top choice of colleges was Furman University, and he received a merit scholarship to attend Furman. The scholarship covered nearly all of Furman's tuition and living expenses.

12. Based on personal circumstances, Plaintiff would not have been able to afford a Furman education without this scholarship.

13. Plaintiff enrolled at Furman University and began classes in the fall of 2023.

14. Plaintiff made a number of new friends at Furman University, including female students C.S. and G.N.[2]

15. Between August 31 and September 9, 2023, Defendant received reports of two instances of sexual assault by Plaintiff.

16. C.S. made an allegation of sexual assault against Plaintiff related to an interaction on August 19, 2023.

17. G.N. made an allegation of sexual assault against Plaintiff related to an interaction on September 8-9, 2023.

18. On September 11, 2023, Defendant's Title IX Coordinator signed a formal complaint against Plaintiff on behalf of C.S.

19. That formal complaint initiated a formal grievance process under Furman University's Sexual Misconduct Policy.

20. On September 12, 2023, the Defendant imposed an interim housing suspension on Plaintiff, resulting in him having to leave University housing.

21. After Plaintiff was removed from Defendant's campus based on these allegations,

---

[2] All students are referred to by initials in these pleadings to maintain the students' privacy.

he was unable to continue his education after just four weeks of college.

22. The Defendant began contacting Plaintiff to collect a balance of over $8,000.00 related to his removal from campus, which would have forced Plaintiff and his family into dire financial straits.

23. After allegations of assault were made against Plaintiff, a number of disparaging posts were made about him on the message board "Yik Yak." Yik Yak is an online app in which students from specific colleges can post anonymous messages. For example, the Furman University Yik Yak would be accessed by Furman students or those on campus, based on the geographical limitations of the app.

24. Defendant was put on notice of these Yik Yak posts and the significant problems they would cause the Plaintiff and the case against him, yet Defendant ignored the posts.

25. Furman's Title IX Coordinator appointed three investigators to conduct a "thorough and impartial investigation" of the allegations against Plaintiff. As part of their task, the investigators were to remain neutral throughout the investigation.

26. After Defendant's investigation, the Plaintiff was accused of Unwelcome Sexual Conduct towards C.S. based on the August 19 incident. The allegations supporting that charge were false.

27. The facts of the August 19 incident were not viewed impartially or neutrally. Instead, the investigation was biased towards the female accuser. The bias was based on gender. There was no discernable difference between the acts of Plaintiff or the accuser, yet the accuser was treated as a victim. The only difference between the two was gender and that was the underlying reason for the proceedings against Plaintiff.

28. Based on the findings from the hearing, both C.S. and Plaintiff were intoxicated at the time of their interaction. The Hearing Board found C.S.'s inability to recall matters from that night was "understandable given her level of intoxication." It found inconsistencies from the Plaintiff related to sexual acts and C.S.'s

intoxication damaged his credibility. The only difference between the two parties was gender and the difference in how their stories were viewed is based on gender bias against the Defendant.

29. The Hearing Board also heard evidence over Plaintiff's objection of the second allegation, made by G.N., of sexual assault. This evidence was deemed "pattern evidence" by investigators acting on behalf of the Defendant.

30. Plaintiff was found responsible for sexual assault and suspended from Furman University. Because Plaintiff had withdrawn from school because he was unable to afford the cost of attendance after these proceedings began, the punishment resulted in a ban on his reapplication to the University until Spring of 2025. More importantly, the finding now creates a permanent record of sexual assault against Plaintiff.

31. A second Hearing Board was convened to hear evidence related to the allegation of G.N. which had also formed pattern evidence related to the first hearing.

32. The allegations from G.N. were so unbelievable the Defendant should not have allowed them to serve as pattern evidence in the first case nor should it have allowed the allegations to proceed to a formal hearing.

33. Defendant based its actions on these unbelievable allegations from G.N. because of its gender bias against the Plaintiff and in favor of the female accuser.

34. Plaintiff was found "not responsible" for the G.N. allegation at a hearing.

35. Plaintiff appealed the decision in the C.S. case in which he was found responsible for sexual assault.

36. Because a significant portion of the hearing in the C.S. case involved the allegations made by G.N., Plaintiff requested his appeal from that case be stayed until the G.N. case was decided. Defendant refused this request.

37. After the Plaintiff was found not responsible for the G.N. case, Plaintiff requested he be allowed to reopen his appeal from the C.S. case decision.

38. Plaintiff was not allowed to reopen his appeal, and as a result the Defendant

allowed a decision to stand that was significantly based on allegations for which the Plaintiff was not found responsible.

## FOR A FIRST CAUSE OF ACTION

### (Title IX violation – erroneous outcome)

39. The outcome of the first Hearing Board was erroneous.
40. Plaintiff should not have been found responsible for sexual assault because he had committed no sexual assault.
41. The following facts cast doubt on the outcome of the Hearing Board:
    a. The Board forgave complainant's mistakes, lack of memory, or inconsistencies based on her intoxication.
    b. The Board held similar inconsistencies against the Plaintiff.
    c. The Board accepted second-hand information as fact and ignored Plaintiff's statements on the facts, including finding a perfectly legitimate answer to a question "vague" because it did not comport with the Defendant's case against Plaintiff.
    d. A significant witness against Plaintiff in both cases, A.D., was involved in the cases in such a way that it should have been obvious he was attempting to manipulate what happened to damage Plaintiff.
    e. C.S. consented to sexual activity with Plaintiff and admitted to that during the course of the investigation.
    f. After the alleged incident, but before making a report, C.S. communicated to Plaintiff she was angry that she was a "second option" when he could not "get with" her friend, which is inconsistent with her allegations.
    g. Defendant allowed the Hearing Board to hear baseless allegations supported by weak and unbelievable evidence as "pattern evidence" in support of its case against Plaintiff.
    h. The Defendant refused to allow the Plaintiff to stay his appeal until the outcome of the G.N. case.

      i.      When the G.N. case was resolved in Plaintiff's favor, the Defendant refused to allow Plaintiff to reopen his appeal and present this new evidence in the appeal.

42.    The finding of the Hearing Board was erroneous.

43.    The erroneous finding of the Hearing Board was the result of gender bias as shown by the following facts:

    a.    The Title IX coordinator made numerous statements to Plaintiff in which she treated him differently than female witnesses or the female complainants.

    b.    Investigators disparaged Plaintiff by noting he "repeatedly declined" to give an interview which was untrue.

    c.    Upon information and belief, Hearing Board decisions by Defendant are biased against males and the Board is more inclined to rule in favor of a female against a male.

    d.    Upon information and belief Defendant's pattern of decision-making treats males significantly differently from females and places males at a disadvantage in defending against allegations.

    e.    The materials linked to Defendant's Title IX programs as well as the partnerships between Defendant and outside sexual assault programs are biased towards females being victims and males being perpetrators.

    f.    The Defendant refused to allow Plaintiff the opportunity to inform his appeal panel that he was found not responsible for "pattern evidence" from accuser G.N. because Defendant had made up its mind based on accusations from females that the male Plaintiff was responsible for these "assaults" and worked to ensure he was disciplined unfairly.

44.    Defendant's acts as described above are the proximate cause of the erroneous outcome of the Hearing Board.

45.    Plaintiff is entitled to injunctive relief reversing the finding of the Hearing Board

that he is responsible for sexual assault.

46. Plaintiff is entitled to all compensatory damages allowed by law because of the Defendant's wrongful acts.

47. Plaintiff is entitled to all costs and attorneys' fees resulting from this action.

## FOR A SECOND CAUSE OF ACTION

### (Title IX violation – selective enforcement)

48. The decision to initiate disciplinary proceedings in this matter was affected by Plaintiff's gender.

49. There was no criminal investigation or prosecution in this case.

50. There was no credible evidence of any sexual assault.

51. There was significant evidence that this was a consensual sexual encounter.

52. The investigation into both the C.S. allegations and the G.N. allegations were undertaken despite a lack of evidence. In fact, the G.N. allegations did not involve any allegation made by the complainant against Plaintiff.

53. Plaintiff is entitled to injunctive relief reversing the finding of the Hearing Board that he is responsible for sexual assault.

54. Plaintiff is entitled to all compensatory damages allowed by law because of the Defendant's wrongful acts.

55. Plaintiff is entitled to all costs and attorneys' fees resulting from this action.

## FOR A THIRD CAUSE OF ACTION

### (Negligence)

56. The Defendant owed Plaintiff a duty to treat him fairly during the course of the investigation into him, treat him fairly during prosecution of his disciplinary proceedings, and follow all its policies and procedures during the course of disciplinary proceedings.

57. Defendant breached its duties to Plaintiff in one or more of the following ways:
    g. In initiating the proceedings under the assumption Plaintiff had committed a violation of the Sexual Misconduct Policy.

  h. In conducting the investigations in an unfair manner, including by assuming Plaintiff had violated the Sexual Misconduct Policy, assuming the complainants were telling the truth, ignoring evidence, and improperly weighting evidence to Plaintiff's disadvantage.

  i. In allowing the Title IX coordinator to treat Plaintiff unfairly, including by being combative and/or dismissive when speaking with him or his agents, by treating the female complainants in a manner calculated to give them an advantage in the hearing, and allowing the entire process to occur with significant bias against Plaintiff.

  j. In allowing the Hearing Board to hear inadmissible, irrelevant, prejudicial, and false evidence.

  k. In allowing the Hearing Board to be exposed to irrelevant and prejudicial evidence prior to hearings.

  l. In failing to reopen the appeal from the C.S. case when significant new evidence was found, and the Defendant was on notice that new evidence was going to be uncovered.

58. Defendant's breach of its duty to the Plaintiff was the proximate cause of injury to the Plaintiff.

59. Plaintiff is entitled to all actual and compensatory damages resulting from the Defendant's breach of duty to Plaintiff.

60. Based on Defendant's reckless and wanton conduct, Plaintiff is entitled to punitive damages against the Defendant.

### FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract)

61. A contractual relationship existed between Plaintiff and Defendant at all times relevant to this Complaint.

62. Plaintiff fulfilled all contractual obligations prior to the Defendant's investigation of him for violation of the school's Sexual Misconduct policy.

63. Defendant's Sexual Misconduct policy requires the Defendant to act in the following ways:
    a. Discrimination because of sex or gender is prohibited.
    b. Providing false information or interfering with an investigation is prohibited.
    c. Information regarding the Respondent in an investigation should be kept confidential.
    d. Investigations and proceedings related to sexual misconduct are to be carried out in an objective manner, without bias towards any party involved in the proceedings.
64. Defendant has materially breached the contract provisions with Plaintiff by failing to do or doing the following things, in violation of the Sexual Misconduct Policy:
    a. Discriminating against Plaintiff on the basis of his sex or gender throughout the proceedings.
    b. Allowing witnesses to give false information in the proceedings.
    c. Allowing a witness to interfere with the proceedings without consequences.
    d. Allowing breaches of confidentiality without taking any action.
    e. Allowing bias against the Plaintiff to affect the investigation and proceedings in this matter.
65. As a proximate cause of the Defendant's breach of contract, the Plaintiff is entitled to all damages available under South Carolina and Federal law, including but not limited to past and future economic losses, loss of educational opportunities, and loss of future career prospects.

Having fully pled his causes of action, the Plaintiff asserts his Seventh Amendment right under the United States Constitution and demands a trial by a jury. He further requests the Court grant judgment in his favor and award the following relief:

a. Injunctive relief removing the disciplinary action described in this Complaint and the corresponding suspension from Plaintiff's

      records.

b. All actual damages.

c. All special damages.

d. All compensatory damages.

e. All punitive damages.

f. All costs and attorneys' fees that are available under any law, rule, or other authority.

g. Any other damages or relief the Court deems just and proper.

                              Respectfully Submitted,

                              ***s/ Joshua Snow Kendrick***
                              Joshua Snow Kendrick (9037)
                              Christopher S. Leonard (10998)
                              KENDRICK & LEONARD, P.C.
                              7 Mills Avenue (29605)
                              P.O. Box 6938
                              Greenville, SC 29606
                              Tel: (864) 760-4000
                              Josh@KendrickLeonard.com

October 28, 2024
Greenville, South Carolina