IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | C/A No. 6:24-cv-06193-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| FURMAN UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant Furman University's Motion to Dismiss. ECF No. 10. Plaintiff filed a Response in Opposition, and Defendant filed a Reply. ECF Nos. 16, 17. For the reasons set forth below, Defendant's Motion is granted.

## I. BACKGROUND[1]

After graduating from high school, Plaintiff enrolled at Furman University and began classes in the fall of 2023. ECF No. 1 at 2. Based on his academic achievement and other accomplishments during his high school career, Plaintiff received a merit scholarship to attend Furman, which covered nearly all his tuition and living expenses. *Id.* Plaintiff would not have been able to afford to attend Furman without this scholarship. *Id.*

---

[1] On a motion to dismiss, Plaintiff's well-pled allegations are accepted as true. Accordingly, this recitation of facts is taken from Plaintiff's Complaint.

Upon enrollment at Furman University, Plaintiff became acquainted with female students C.S. and G.N.[2]  *Id.*  Between August 31, 2023, and September 9, 2023, Defendant received reports of two instances of sexual assault by Plaintiff.  *Id.*  C.S. made an allegation of sexual assault against Plaintiff related to an interaction on August 19, 2023.  *Id.*  G.N. made an allegation of sexual assault against Plaintiff related to an interaction on September 8–9, 2023.  *Id.*  On September 11, 2023, Defendant's Title IX[3] Coordinator signed a formal complaint against Plaintiff on behalf of C.S.  *Id.*  That formal complaint initiated a formal grievance process under Defendant's Sexual Misconduct Policy (the "Policy").  *Id.*  On September 12, 2023, Defendant imposed an interim housing suspension on Plaintiff, resulting in him having to leave Defendant's university housing.  *Id.*  After Plaintiff was removed from Defendant's campus based on these allegations, he was unable to continue his education after just four weeks of college.  *Id.* at 2–3.  Defendant thereafter began contacting Plaintiff to collect a balance of over $8,000.00 related to his removal from campus.  *Id.* at 3.

Defendant's Title IX Coordinator appointed three investigators to conduct a "thorough and impartial investigation" of the allegations against Plaintiff.  *Id.*  As part of their task, the investigators were to remain neutral throughout the investigation.  *Id.*  After Defendant's investigation, Plaintiff was accused of Unwelcome Sexual Conduct towards

---

[2]  The Parties refer to the two female complainants by their initials to maintain the individuals' privacy, so the Court does the same.

[3] The Court's use of "Title IX" throughout this Order is in reference to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

C.S. based on the August 19 incident. *Id.* There was no discernable difference between the acts of Plaintiff or C.S. and G.N., yet C.S. and G.N. were treated as victims. *Id.*

Based on the findings from the hearing, both C.S. and Plaintiff were intoxicated at the time of their interaction. *Id.* The Hearing Board found C.S.'s inability to recall matters from that night was "understandable given her level of intoxication." *Id.* It found inconsistencies from Plaintiff related to sexual acts and C.S.'s intoxication damaged his credibility. *Id.* at 3–4. Over Plaintiff's objection, the Hearing Board also heard evidence of the second allegation, made by G.N., of sexual assault, which was deemed "pattern evidence" by investigators acting on behalf of Defendant. *Id.* at 4.

Plaintiff was found responsible for sexual assault of C.S. and suspended from Defendant. *Id.* Because Plaintiff had already withdrawn from school based on his inability to afford the cost of attendance after these proceedings began, the punishment resulted in a ban on his reapplication to Furman until Spring of 2025. *Id.* The finding also created a permanent record of sexual assault against Plaintiff. *Id.* Plaintiff appealed the decision in the C.S. case. *Id.* Because a significant portion of the hearing in the C.S. case involved the allegations made by G.N., Plaintiff requested his appeal from that case be stayed until the G.N. case was decided. *Id.* Defendant refused this request. *Id.*

A second Hearing Board was convened to hear evidence related to the allegation of G.N. which had also formed pattern evidence related to the first hearing. *Id.* Plaintiff was found "not responsible" for the G.N. allegation at a hearing. *Id.* After the Plaintiff was found not responsible for the G.N. case, Plaintiff requested he be allowed to reopen

his appeal from the C.S. case decision. *Id.* Plaintiff was not allowed to reopen his appeal. *Id*.

On October 28, 2024, Plaintiff filed this action asserting four causes of action against Defendant: (1) violation of Title IX based upon an erroneous outcome, (2) violation of Title IX based on selective enforcement, (3) negligence, and (4) breach of contract. *See* ECF No. 1. Defendant has moved to dismiss all four causes of action. *See* ECF No. 10. Plaintiff responded in opposition and Defendant replied. *See* ECF Nos. 16, 17.

## II.  APPLICABLE LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). In a Rule 12(b)(6) motion, the court is obligated "to assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in the light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id*.

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

4

(2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## III. DISCUSSION

### A. Consideration of Extrinsic Documents

As an initial matter, the Court addresses whether it may consider the documents attached to Defendant's Motion to Dismiss, which include (1) a copy of the Defendant's Sexual Misconduct Policy 2023-24 (the "Policy"); (2) excerpts of the Defendant's Student Handbook titled "Student Conduct Procedures" (the "Student Handbook"); (3) a copy of the Defendant's Investigation Report related to the allegations by C.S., dated January 3, 2024 ("C.S. Investigation Report"); (4) an excerpt of the C.S. Final Outcome Letter dated January 30, 2024 ("C.S. Outcome Letter"); (5) a copy of the Defendant's Investigation Report related to the allegations by G.N., dated January 23, 2024 ("G.N. Investigation Report")[4]; and (6) an excerpt of the G.N. Final Outcome Letter dated March 25, 2024 ("G.N. Outcome Letter").[5]  *See* ECF Nos. 10-3, 10-4, 10-5, 10-6, 10-7, 10-8.   The attachments altogether contain approximately 142 pages of exhibits.  *See id.*

Plaintiff contends that the Court should not consider any of the extrinsic documents attached by Defendant to its Motion.  ECF No. 16 at 3–6.  According to Plaintiff, none of

---

[4] The Court refers to the C.S. Investigation Report and G.N. Investigation Report, collectively, as the "Investigation Reports."

[5] The Court refers to the C.S. Outcome Letter and G.N. Outcome Letter, collectively, as the "Outcome Letters."

the documents introduced by Defendant are integral to the Complaint and the Court's reliance on these documents would improperly convert this Motion to one for summary judgment, which would be premature since discovery has yet not been completed. *Id*. at 4. Specifically, Plaintiff contends that the Policy and the Student Handbook are irrelevant at this stage of litigation because he does not rely on them in Complaint, although he does acknowledge that he cites to them as a source of the Parties' obligations. *Id.* Plaintiff argues that the Policy and the Student Handbook add nothing to Defendant's argument because whether Defendant followed the policies set out in these documents can only be determined through discovery. *Id.* Plaintiff contends the C.S. Investigation Report, C.S. Outcome Letter, G.N. Investigation Report, and G.N. Outcome Letter are also irrelevant because these documents, which were prepared by Defendant, simply reflect its view of what happened and are not integral to his Complaint. *Id.* at 5. According to Plaintiff, these documents are simply some evidence of Defendant's version of events, which Plaintiff should have the opportunity to rebut with his own evidence after the conclusion of discovery and are not appropriate for consideration at this stage of litigation. *Id.*

Defendant contends that these documents are integral to Plaintiff's Complaint. ECF No. 17 at 2–3. Defendant asserts Plaintiff relies on the Policy as the basis of his breach of contract claims and references to and directly quotes from the C.S. Outcome Letter and G.N. Outcome Letter. *Id.* Defendant argues the Court should rely on the documents referenced by Plaintiff in his Complaint, not for the truth of their contents, but rather to determine if the allegations are well-pleaded. *Id.* (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

Generally, at the motion to dismiss stage, the Court's analysis is based solely upon the sufficiency of the facts alleged by the plaintiff in the complaint. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). Indeed, "[c]onsideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment." *Id.* However, the Court may consider a document attached to a motion to dismiss when it is "integral to and explicitly relied on in the complaint" and its authenticity is not disputed. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). "A document is integral to a complaint where its very existence, and not the mere information it contains, gives rise to the legal rights asserted or where the legal rights at issue in the complaint rely heavily upon its terms and effect." *Moler v. Univ. of Md. Med. Sys.*, No. 1:21-cv-01824, 2022 WL 2716861, at *2 (D. Md. July 13, 2022) (internal quotation marks omitted).

For this Motion to Dismiss, the Court will consider only the Policy and the Student Handbook, which Plaintiff incorporates explicitly by reference in his Complaint, as their existence forms the basis of—at the very least—Plaintiff's negligence and breach of contract claims, and the authenticity of which are not disputed by the Parties. *See* ECF Nos. 1, 10, 16, 17. While the Court agrees that these documents are not determinative of whether Defendant followed the procedures as outlined in these documents, their existence provides the terms of the alleged "contract" between the Parties and is relied upon by Plaintiff in his allegations for the creation of "duty" on behalf of Defendant. ECF No. 1 at 7–9. Thus, without the existence of these documents, there would be no basis for either Plaintiff's breach of contract or negligence claims. Moreover, the Policy specifically addresses what evidence against Plaintiff was admissible to be reviewed by

the Hearing Board in the disciplinary proceedings against him, and the Hearing Board's review of certain "pattern evidence" is integral to Plaintiff's allegations of impermissible bias in violation of Title IX. *Id.* at 5–7. Courts in this Circuit repeatedly have found that similar documents are appropriate to consider at the motion-to-dismiss stage. *See, e.g.*, *Am. Chiropractic*, 367 F.3d at 234 (considering documents outside of the complaint in affirming dismissal because the plaintiff explicitly referred to and relied on representations made in an agreement in alleging misrepresentation by the defendant); *NAC Consulting, LLC v. 3Advance, LLC*, 650 F. Supp. 3d 441, 446 (E.D. Va. 2023) (finding the court may consider documents such as a contract in evaluating a motion to dismiss a contract dispute); *Baker v. McCall,* 842 F.Supp.2d 938, 943 (W.D. Va. 2012) (considering, when ruling on a motion to dismiss, a school system's written nepotism policy where the plaintiff's complaint referred to the policy, it was "central to plaintiff's claim," and its authenticity was not disputed). Accordingly, the Court finds the Policy and the Student Handbook are integral to Plaintiff's Complaint and will consider them in deciding Defendant's Motion.

However, the Court finds that the other attached exhibits—the Investigation Reports and the Outcome Letters—are not integral to Plaintiff's claims and thus should not be considered at this stage of litigation. The Fourth Circuit's reasoning in *Goines v. Valley Community Services Board*, 822 F.3d 159 (4th Cir. 2016), is instructive on this issue. In *Goines*, the Fourth Circuit considered whether the district court properly considered police incident report in deciding a motion to dismiss. *Id*. at 166. The incident report was quoted in but not attached to the complaint. *Id.* The plaintiff's claims, however, did not turn on nor were they otherwise based on statements contained in the incident

report.  *Id.*  Accordingly, the Fourth Circuit reasoned that, under these circumstances, the incident report was arguably not integral to the complaint and should not have been considered by the district court.  *Id.*  However, because the plaintiff did not argue otherwise, the Fourth Circuit assumed, without deciding, that the incident report was integral to the complaint and "because there [was] no question about [its] authenticity" assumed that the district court properly treated the incident report as if it had been attached to the complaint.  *Id.*  The Fourth Circuit then turned its analysis to whether the district court properly treated the factual contents of the incident report as true.  *Id.*

The defendants in *Goines* argued, and the district court accepted, that the incident report should be considered under the "exhibit prevails" rule, which provides that "in the event of conflict between the bare allegations of the complaint and any exhibit attached . . ., the exhibit prevails."  *Id.* (citing *Fayetteville Inv'rs v. Commercial Builders, Inc.,* 936 F.2d 1462, 1465 (4th Cir. 1991); *accord S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,* 713 F.3d 175, 182 (4th Cir. 2013)).  Under the rule, if a plaintiff "attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."  *Id.* (citing *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 754 (7th Cir. 2002)). However, as the Fourth Circuit explained, "Plaintiffs attach exhibits to their complaints for all sorts of reasons, . . . and it is not always appropriate to conclude that the plaintiff has adopted the contents of an attached document."  *Id.* at 167 (citing *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 778 (7th Cir. 2007); *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 455 (7th Cir. 1998)).

The Fourth Circuit went on to explain:

> The purpose for which the document is offered is particularly important where the document is one prepared by or for the defendant. Such unilateral documents may reflect the defendant's version of contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the plaintiff. Treating the contents of such a document as true simply because it was attached to or relied upon in the complaint, even though the plaintiff relied on it for purposes other than truthfulness, would be "contrary to the concept of notice pleading" and "would enable parties to hide behind untested, self-serving assertions."

*Id.* at 168 (citing *N. Ind. Gun & Outdoor,* 163 F.3d at 456). Based on this reasoning, the Fourth Circuit found that the plaintiff's reliance on the incident report for some facts alleged in his complaint did not equate to the plaintiff adopting the incident report as true. *Id*. No portion of the plaintiff's allegations in *Goines* was dependent upon the truth of any statements contained the incident report. *Id.* Rather, the complaint told the story of the plaintiff's interaction with police and demonstrated the mistakes he believed were made by officers, and the plaintiff's references to the incident report were made to support his allegations that the police officers did not understand what he was attempting to communicate. *Id.* Accordingly, the Fourth Circuit found the district court erred by treating as true the factual statements contained in the incident report and found that the plaintiff's complaint should not have been dismissed based on the statements in the incident report. *Id.* at 168–69.

Similarly, here, while the information contained in at least the Outcome Letters is directly quoted by Plaintiff in his Complaint, the existence of the Outcome Letters or Incident Reports is not what gives rise to Plaintiff's claims. Rather, the documents reflect a memorialization, made by the Defendant, of the procedures that Plaintiff now challenges. However, unlike in Goines, Plaintiff in this action asserts that the Outcome

Letters and Incident Reports are *not* integral to his Complaint. *See* ECF No. 16 at 5–6. As noted by the Fourth Circuit in *Goines*, "[l]imited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint." 822 F.3d at 166 (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). The Court finds that, under these circumstances, the Outcome Letters and Incident Reports are not integral to the Complaint and therefore should not be considered by the Court in deciding Defendant's Motion to Dismiss.

Even if Plaintiff had not challenged the Outcome Letters and Incident Reports, based on *Goines*, the Court's analysis would not be impacted if it were to consider these documents as integral to the Complaint. Like the incident report in *Goines*, Plaintiff's quotations from the Outcome Letters or Investigation Reports are arguably not for the purpose of relying on the truthfulness of these documents. Rather, Plaintiff relies on these documents to demonstrate where he believes the Hearing Board's conduct was biased. Additionally, like in *Goines,* these unilateral documents, prepared by or for the defendant, reflect the defendant's version of contested events. Treating these documents as true simply because they were relied upon in the Complaint, "would be 'contrary to the concept of notice pleading' and 'would enable parties to hide behind untested, self-serving assertions.'" *Goines*, 822 F.3d 159, 168 (quoting *N. Ind. Gun & Outdoor,* 163 F.3d at 456). As Plaintiff notes, this memorialization may be controverted by other evidence that may arise over the course of discovery and, procedurally, consideration of these documents would be more appropriate after the conclusion of discovery on a motion for summary judgment. While relevant to Plaintiff's allegations, the Outcome Letters and Investigation Report are not integral to Plaintiff's Title IX claim because he relies on the accumulation

of Defendant's alleged actions during the Title IX investigation to show bias, not just those memorialized in these attached documents. Moreover, given the procedural posture, the Court is concerned about considering well over 100 pages of exhibits when the Parties have not been afforded an opportunity to conduct reasonable discovery. For these reasons, the Court finds that the Outcome Letters and Reports should not be considered in deciding Plaintiff's Motion to Dismiss.

## B. Title IX Claims

Plaintiff asserts two claims under Title IX. ECF No. 1 at 5–7. Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "A Title IX plaintiff may pursue a private cause of action against—and obtain damages from—a 'funding recipient [that] engages in intentional conduct that violates the clear terms of the statute.'" *Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd.*, 832 F. App'x 802, 804 (4th Cir. 2020) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999)) (alteration in original). Here, the issue is whether Defendant discriminated against Plaintiff "on the basis of sex." *Id.*

Plaintiff's two claims—for erroneous outcome and selective enforcement—follow the framework for evaluating higher-education disciplinary proceedings as outlined by the Second Circuit in *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994), which the Fourth Circuit recognized in *Doe 2*, 832 F. App'x at 802, 804 (4th Cir. 2020). However, in *Sheppard v. Visitors of Virginia State University*, 993 F.3d 230, the Fourth Circuit adopted the approach of the Seventh Circuit to Title IX claims, which rejected *Yusuf* as

an all-inclusive doctrinal framework for student disciplinary proceedings and instead emphasized that the standard approach for evaluating Title IX claims is determining whether the plaintiff has alleged facts that, if true, would "raise a plausible inference that the university discriminated against [the student] on the basis of sex." *Id.* at 235–36. In adopting this approach, the Fourth Circuit emphasized that it found no inherent problems with the erroneous outcome and selective enforcement theories identified in *Yusuf*. *Id.* "In fact, either theory, with sufficient facts, may suffice to state a plausible claim. [The Fourth Circuit] merely emphasize[d] that the text of Title IX prohibits all discrimination on the basis of sex." *Id.* (citing *See* 20 U.S.C. § 1681(a)).

Because Plaintiff has structured his claims under the *Yusuf* framework, the Court will evaluate each claim separately, while bearing in mind the Fourth Circuit's clarification that to plausibly state a claim under Title IX generally a plaintiff must allege adequately that the university disciplined him on the basis of sex—that is, because he is male. *Id.* "[I]nherent in this approach is a requirement that a Title IX plaintiff adequately plead causation—that is, a causal link between the student's sex and the university's challenged disciplinary proceeding." *Id.* "'[O]n the basis of sex' requires 'but-for' causation in Title IX claims alleging discriminatory school disciplinary proceedings." *Id.* at 237. To sufficiently plead causation, a plaintiff must allege some factual material that creates a plausible inference that the defendant's decision was infected with gender bias. The following types of factual allegations may support a plausible inference of gender bias: "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that [ ] tend to show the influence of gender." *Doe v. Cummins*, 662 F. App'x. 437, 452 (6th Cir. 2016) (quoting *Yusuf*, 35 F.3d at 715). "Stated

differently, a Title IX plaintiff successfully alleges gender bias if he or she points to statistical evidence of gender bias in the University's decision making, policies and procedures that are designed to reach gender-specific outcomes, and/or statements by university officials evidencing gender bias." *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 585 (E.D. Va. 2018) (citations omitted). The Court evaluates each of Plaintiff's Title IX claims below.

    1. <u>Erroneous Outcome</u>

In relation to his erroneous outcome claim, Plaintiff alleges that the Hearing Board's erroneous finding was the result of gender bias as shown by the following facts: the Title IX coordinator made numerous statements to Plaintiff in which she treated him differently than female witnesses or the female complainants; investigators disparaged Plaintiff by noting he "repeatedly declined" to give an interview which was untrue; upon information and belief, Hearing Board decisions by Defendant are biased against males and the Board is more inclined to rule in favor of a female against a male; upon information and belief, Defendant's pattern of decision-making treats males significantly differently from females and places males at a disadvantage in defending against allegations; the materials linked to Defendant's Title IX programs as well as the partnerships between Defendant and outside sexual assault programs are biased towards females being victims and males being perpetrators; and the Defendant refused to allow Plaintiff the opportunity to inform his appeal panel that he was found not responsible for "pattern evidence" from G.N. because Defendant had made up its mind based on accusations from females that the male Plaintiff was responsible for these "assaults" and worked to ensure he was disciplined unfairly. ECF No. 1 at 6.

Defendant contends these allegations are insufficient to plausibly support a claim under Title IX because Plaintiff has failed to make allegations supporting a plausible inference that discrimination was the but-for cause of the adverse ruling against Plaintiff. ECF No. 10-1 at 11–17. Defendant also argues that the intervening review of the appeal of the adverse decision against Plaintiff breaks the chain of causation and Plaintiff has made no allegations that there was discrimination by the appeal panel. *Id.* at 20–22. In response, Plaintiff argues he has properly pled that gender discrimination was the but-for cause of his damages. ECF No. 16 at 6–8. For the reasons set forth below, the Court finds that Plaintiff's allegations are insufficient to show that gender discrimination was the but-for cause of the adverse disciplinary decision against him.

First, Plaintiff's allegations concerning different treatment of him, as the male-accused, in comparison to female witnesses and complainants is insufficient to show causation because he is not similar situated to witnesses and complainants. Other than alleging the Title IX coordinator "made numerous statements" treating Plaintiff differently than female witnesses or female complainants, Plaintiff makes no specific allegations concerning what exactly the Title IX coordinator said. *See* ECF No. 1. Disparate treatment between a male accused and female witnesses or complainants is not enough. Without allegations that the Title IX coordinator's specific comments showed gender bias, which impacted the outcome of Plaintiff's disciplinary proceedings, it is entirely plausible that the Title IX coordinator's difference in treatment was based upon Plaintiff's status as a respondent to sexual assault claim and the female individuals' status as witnesses and complainants, which courts have repeatedly found to be permissible and insufficient to support a claim of gender bias. *See Doe v. Coastal Carolina Univ.*, 522 F. Supp. 3d 173,

181 (D.S.C. 2021) (explaining that difference in treatment of an alleged sexual assailant to that of an alleged victim is "not different treatment for similarly situated students on the basis of gender" and that there is "a legitimate basis for a different approach in support"); *Doe v. Fairfax Cnty. Sch. Bd.*, 403 F. Supp. 3d 508, 519 (E.D. Va. 2019) (collecting cases and recognizes that "[c]ourts have widely held that vigilance in enforcing Title IX, even when it results in bias in favor of victims and against those accused of misconduct, is not evidence of anti-male bias").  Furthermore, Plaintiff's allegation that there was "no discernable difference between the acts of Plaintiff and [C.S.]" on the night in question is inapposite.  ECF No. 1 at 3.  Plaintiff's allegations clearly provide that C.S. was the complainant and nowhere does he allege that he also filed complaints against C.S.  *See id.*  Accordingly, based on Plaintiff's own allegations, the two were not similarly situated.

Second, Plaintiff's reliance on allegedly gender-based disparate treatment of victims as females and perpetrators as males by "materials linked to" and sexual assault programs outside of Defendant's control is also insufficient to show Defendant's gender bias was the but-for cause of the adverse decision in his disciplinary proceeding.  Plaintiff makes no allegations that these outside, third-party materials and partnership programs had any bearing on the procedures against him.  *See* ECF No. 1.  Moreover, like Plaintiff's other allegations, Plaintiff makes no specific allegation regarding what these materials or programs said to indicate that they were biased against males as being perpetrators.  *See id*.  Plaintiff's allegations give no context for how these third-party resources were utilized by Defendant or how they create a plausible inference that these allegedly biased resources impacted the proceedings against him.  *See, e.g.*, *Doe v. Virginia Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 503 (W.D. Va. 2019) (finding that a male student

16

failed to sufficiently allege gender bias was the motivating factor for the adverse disciplinary proceeding against him where the student alleged that the senior vice president and interim Title IX coordinator made suspect statements but nowhere did the complaint allege that either played any role in the decision to discipline the student or the appeal of that decision).

Third, Plaintiff's allegation concerning his treatment based on his perceived willingness to be interviewed related to the incidents in question also fails to sufficiently allege causation based on gender bias because Plaintiff has failed to sufficiently allege any tie between this conduct on behalf of the Hearing Board and his gender.  This allegation appears to be wholly unconnected to gender, other than appearing in a list of allegations below the heading "these following facts demonstrate the finding of the hearing was based on gender bias."  Even viewing the allegations in the Complaint in the light most favorable to Plaintiff, simply alleging this conduct is a demonstration of gender bias is nothing more than a conclusory allegation, which the Court need not consider as fact.

Fourth and fifth, Plaintiff's two allegations based "upon information and belief" are speculative and conclusory allegations that are insufficient to support his claim for violations of Title IX.  Several courts have found these allegations to be "the type of conclusory statements that *Iqbal* and *Twombly* do not allow the court to consider."  *Doe v. Virginia Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 503 (W.D. Va. 2019) (finding broad allegations of gender bias in disciplinary proceedings without specific supporting facts to be insufficient to survive a motion to dismiss); *Sigma Lambda Upsilon/Senoritas Latinas Unidas Sorority, Inc. v. Rector & Visitors of Univ. of Virginia,*

503 F. Supp. 3d 433, 451 (W.D. Va. 2020) (finding that plaintiff's allegations based "on information and belief" that fraternal organizations have been treated differently by the defendant were conclusory and  insufficient to survive a motion to dismiss); *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701–02 (4th Cir. 2023)..

In *Kashdan*, a university professor brought a claim against the university under Title IX after he was disciplined for creating a hostile educational environment for allegedly harassing current and former female graduate students.  70 F.4th at 698–700.  In support of his Title IX claim, the plaintiff alleged that "upon information and belief" the university did not formally investigate female professors accused of sexual- or gender-based harassment at the same frequency as males, and that when the university did find female professors in violation of its policies, it sanctioned them less severely.  *Id.* at 701.  The district court found that the plaintiff's claims were insufficient and granted the university's motion to dismiss.  The Fourth Circuit affirmed.  *Id.* at 702.  The Fourth Circuit explained that "[a]lthough a plaintiff may initially plead parts of his case 'upon information and belief,' his allegations may not be wholly conclusory."  *Id.* at 701–02 (citing *Sheppard*, 993 F.3d at 234).  The plaintiff's "upon information and belief" allegations were "far too speculative" and "devoid of facts supporting the allegations that were pleaded upon information and belief."  *Id.* at 702.  This was especially true when plaintiff's "allegations of selective enforcement [were] not supported by any well-pled facts that exist independent of his legal conclusions."  *Id.*  Accordingly, the Fourth Circuit affirmed the dismissal of the plaintiff's Title IX claim under Rule 12(b)(6).  *Id.*

Here, Plaintiff's allegations are almost identical to those in *Kashdan*.  *See* ECF No. 1 at 6 (alleging that "[u]pon information and belief, Hearing Board decisions by Defendant

are biased against males and the Board is more inclined to rule in favor of a female against a male" and "[u]pon information and belief Defendant's pattern of decision-making treats males significantly differently from females and places males at a disadvantage in defending against allegations").   Plaintiff's attempts to distinguish his allegations from those in *Kashdan* are unpersuasive.  *See* ECF No. 16 at 6–7.   Plaintiff argues that the allegations seem similar to his own pleadings at "first blush" but these allegations are just a portion of the allegations he makes against Defendant.   *Id.*   Plaintiff contends that because he has pled "more specific facts," there is an inference of discrimination.   *Id.* Plaintiff does not point to which "more specific facts" purportedly support his "upon information and belief" allegations. *See id.*  In *Kashdan*, the plaintiff also made allegations concerning the university officials' statements purportedly showing anti-male bias and further alleged that there was pressure from the Department of Education and the general climate at the university to find sexual harassment accusations substantiated.  70 F.4th at 701.   These allegations arguably create a stronger inference of gender bias than Plaintiff's own allegations in this action, but the Fourth Circuit still found that these assertions were insufficient to support his claim.  Moreover, as the Court addresses above and below, Plaintiff's other allegations are insufficient to support a plausible inference that gender bias was the but-for cause of the outcome of Plaintiff's disciplinary proceedings.

Plaintiff further relies on one court's finding that similar allegations are sufficient to make it past a motion to dismiss in arguing that his claim should be allowed to proceed. *Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 377 (D.S.C. 2019) (finding a plaintiff's allegations regarding widespread anti-male bias in Title IX investigations was sufficient at the motion-to-dismiss stage of litigation because evidentiary materials concerning such

bias were within the defendant's control given the confidential nature of disciplinary proceedings against students accused of sexual misconduct). However, *Coastal Carolina* was decided before *Kashdan*. *See Coastal Carolina*, 359 F. Supp. at 377 (decided in 2019); *Kashdan*, 70 F.4th at 701–02 (decided in 2023). Additionally, the plaintiff in *Coastal Carolina* made significant allegations in addition to those based upon information and belief, including allegations that the university inappropriately ordered a second hearing after the plaintiff was found not responsible in the first hearing, the university failed to follow its own policy to have a student on the appeal panel, the dean at the university engaged in inappropriate conduct with the plaintiff and then was later "spurned" by the plaintiff. 359 F. Supp. at 376. Based on controlling Fourth Circuit precedent, Plaintiff's allegations based upon information and belief, as stated, are insufficient to state a claim under Title IX.

Finally, Plaintiff's allegation that he was not allowed to stay his appeal or reopen it to present exculpatory evidence in his favor regarding patten evidence because of gender bias, is insufficient to show gender bias was the but for cause of the adverse decision against him.

Regarding "pattern evidence," the Policy provides as follows:

> Regarding the Respondent: Regardless of whether the Respondent was formally investigated or found responsible for such conduct, such evidence may be permitted if it is relevant to show that the Respondent has engaged in a pattern of behavior similar to the alleged Sexual Harassment at issue before the hearing board, provided that (A) the Respondent has not been found "not responsible" by the University in a proceeding related to such conduct . . . .

ECF No. 10-3 at 28. Regarding appeals, the Policy provides that "the Respondent may appeal the decision of the hearing board and/or the sanctions imposed on the

Respondent by submitting a written appeal to the Title IX Coordinator within seven calendar days from the date of the final outcome letter." *Id.* at 33. The Policy also states that the only permissible grounds for an appeal of responsibility include: (i) a procedural irregularity affected the outcome of the matter; (ii) new evidence is available that was not reasonably available at the time the determination regarding responsibility was made that could affect the outcome of the matter; and (iii) the Title IX Coordinator, an investigator, or a hearing board member had a conflict of interest or bias for or against complainants or respondents generally or the individual Complainant or Respondent that affected the outcome of the matter. *Id.* The Policy does not outline any possible way to stay an appeal or reopen an appeal outside of the initial seven days in which an appeal may be filed. *See id*.

The Policy provides that "[r]egardless of whether the Respondent was formally investigated or found responsible" for prior conduct, such evidence may be presented as pattern evidence against a respondent unless "the Respondent has not been found 'not responsible' by the University in a proceeding related to such conduct." ECF No. 10-3 at 28. Plaintiff's own allegations support that at the time of his hearing in C.S., when the G.N. evidence was presented, no decision had yet been made in the G.N. case. *See* ECF No. 1 at 3–5. The Policy allowed presentation of this evidence and, by its plain language, it does not only allow for such evidence when the respondent is male. Further, Plaintiff makes no allegation that in hearings where the respondent is a female such evidence has not been allowed, nor has he made any other allegations that indicate gender-based application of this provision of the Policy. Plaintiff's general allegation that the G.N. evidence was allowed in solely because of Defendant's gender bias is nothing

more than a legal conclusion.  The Policy allowed for such evidence to be admitted at the time it was heard in the C.S. hearing, and Plaintiff has made no factual allegations to support that this evidence was only allowed to be heard because of his gender.  While the Court certainly questions the timeline of events in regard to fairness to Plaintiff in fully presenting a defense to the allegations against him in the C.S. hearing, Plaintiff's allegations do not show that his gender status was the but-for cause of any potential unfairness.

The Court is equally unpersuaded that Plaintiff has sufficiently alleged that he was not allowed to stay or reopen his appeal based on his gender.  Plaintiff alleges simply that he was not allowed to stay or reopen his appeal because he was male.  ECF No. 1 at 6.  Based on Plaintiff's own allegations he did not have access to the "new evidence" regarding the pattern evidence from the G.N. hearing until after the seven days to appeal the C.S. decision had expired.  *Id.* at 3–5.  However, these allegations, alone, do not create a plausible inference that but-for Plaintiff's status as male he would have had the opportunity to stay or reopen his appeal to present the final outcome of the G.N. decision.  Upon the Court's review of the Policy's language concerning appeal procedures, it finds there is no language skewed in favor of one gender or the other.  Indeed, without consideration of gender, the Policy is equally hostile to consideration of new evidence outside of the strict seven-day window for appeal as to both complainants and respondents.  Additionally, Plaintiff has made no allegations that females were allowed to stay appeal proceedings or reopen an appeal under similar circumstances.  *See* ECF No. 1.

Plaintiff's allegations present a question of whether Defendant's appeals process generally, which provides that new evidence is a ground for appeal but does not provide for any avenue to raise such evidence if it were to come to light outside of a strict seven-day appeal window, is equitable regardless of whether the appellant is male or female. While the Court thus questions the general equity of Defendant's appeals process regarding new evidence, Plaintiff has asserted no facts sufficient to show that he was not allowed to stay or reopen his appeal because of his gender rather than because the Policy did not allow a way for the appeal time to be stayed or reopened, regardless of gender status. Even if the Policy raises serious questions of fairness generally, that is not a basis for setting aside the Hearing Board's decision under Title IX where there is nothing to plausibly support that the Policy was designed to reach gender-specific outcomes. For these reasons, the Court finds that Plaintiff's allegations are insufficient to state a claim under Title IX and, accordingly, Plaintiff's erroneous outcome claim is dismissed.

    2. <u>Selective Enforcement</u>

Plaintiff alleges that the decision to initiate the disciplinary proceedings in this matter was affected by his gender. ECF No. 1 at 7. Plaintiff alleges these investigations were undertaken despite there being no criminal investigation or prosecution relating to the accusations against him, the lack of evidence of sexual assault, and evidence that this was a consensual sexual encounter. *Id.* Defendant contends that these allegations are speculative and fail to create any plausible inference that Plaintiff was treated differently than any other similarly situated student on the basis of his sex. ECF No. 10-1 at 19.

The Court is compelled to agree with Defendant. Plaintiff makes no allegations that plausibly create an inference that Defendant's decision to pursue disciplinary proceedings against him was based on his gender. Plaintiff makes no allegation, beyond conclusory assertions, that support a plausible inference that gender was the but-for cause of the decision to initiate disciplinary proceedings in this matter. There are no allegations that female students engaged in similar conduct and were not subject to the same disciplinary proceedings as Plaintiff. Indeed, based on the allegations of Plaintiff's Complaint, the only plausible inference is that he was treated differently than his female accusers. The only allegations regarding similar "conduct" are that the *complainants* engaged in similar conduct by becoming intoxicated. ECF No. 1 at 3–4. But, as outlined above, allegations like these are insufficient to show that gender discrimination was the but-for cause of disciplinary proceedings because complainants and respondents are not similarly situated and so differential treatment between the two groups is not enough to allege gender bias. *See, e.g.*, *Coastal Carolina Univ.*, 522 F. Supp. 3d at 181; *Fairfax Cnty. Sch. Bd.*, 403 F. Supp. 3d at 519. Accordingly, Plaintiff has failed to sufficiently allege that gender bias was the but-for cause of the adverse decision against him. Because Plaintiff has failed to allege an essential element of his claim, his Title IX claim based on selective enforcement is dismissed.[6]

---

[6] The Court notes that even if Plaintiff's allegations regarding the disciplinary proceedings before the Hearing Board were sufficient to state a claim under Title IX, Plaintiff's allegations under Title IX would likely still fail to state a claim because he has not alleged discrimination in the appellate review process. *See, e.g.*, *Neal v. E Carolina*, 53 F.4th 130, 152 (4th Cir. 2022) (explaining on summary judgment that "[f]urther breaking the link between Neal's dismissal and any discriminatory motive is the Graduate Review Panel's independent evaluation of Neal's record and its recommendation to uphold her dismissal). However, because the Court finds that Plaintiff has failed to allege gender bias was the but-for cause of the Hearing Board's adverse decisions against him

## C. Negligence

Plaintiff further alleges that Defendant was negligent in its handling of the disciplinary proceedings against him.  ECF No. 1 at 7–8.  Specifically, Plaintiff alleges that Defendant owed him "a duty to treat him fairly during the course of the investigation into him, treat him fairly during the prosecution of his disciplinary proceedings, and follow all its policies and procedures during the course of disciplinary proceedings."  *Id.* at 7. Plaintiff alleges Defendant breached these duties in the following ways:

> In initiating the proceedings under the assumption Plaintiff had committed a violation of the Sexual Misconduct Policy.
>
> In conducting the investigations in an unfair manner, including by assuming Plaintiff had violated the Sexual Misconduct Policy, assuming the complainants were telling the truth, ignoring evidence, and improperly weighting evidence to Plaintiff's disadvantage.
>
> In allowing the Title IX coordinator to treat Plaintiff unfairly, including by being combative and/or dismissive when speaking with him or his agents, by treating the female complainants in a manner calculated to give them an advantage in the hearing, and allowing the entire process to occur with significant bias against Plaintiff.
>
> In allowing the Hearing Board to hear inadmissible, irrelevant, prejudicial, and false evidence.
>
> In allowing the Hearing Board to be exposed to irrelevant and prejudicial evidence prior to hearings.
>
> In failing to reopen the appeal from the C.S. case when significant new evidence was found, and the Defendant was on notice that new evidence was going to be uncovered.

*Id.* at 7–8.

---

for either of his Title IX claims, the Court need not reach Defendant's arguments regarding Defendant's appellate review of these decisions.

Defendant argues that Plaintiff's negligence claim is subject to dismissal because the Complaint does not allege a legal duty owed or breach of that duty. ECF No. 10-1 at 22–25. Defendant contends that there is no South Carolina precedent recognizing a legal duty for a university to treat a student fairly during investigation and disciplinary proceedings and to follow university policy in the context of sexual misconduct allegations. *Id.* at 24. Additionally, Defendant contends it did not voluntarily undertake a duty to protect Plaintiff and Plaintiff alleges only economic harm—not physical injury— which it argues further supports finding that Plaintiff has failed to allege a legal duty. *Id.* Even if a duty was established on the part of Defendant, Defendant contends it has not breached the purported duty to treat him fairly and follow its own policies and procedures. *Id.* Plaintiff contends Defendant did undertake a duty to treat him fairly, as set out in the Student Handbook used to govern disciplinary hearings, and that Defendant had a duty to follow its own policies and procedures. ECF No. 16 at 9–10. Plaintiff asserts he has alleged these policies and procedures were not followed and that failure to follow these policies was a breach of Defendant's duty to Plaintiff. *Id.*

To state a claim for negligence, a plaintiff must allege facts showing (1) a duty of care owed by the defendant; (2) a breach of that duty by a negligent act or omission; (3) a negligent act or omission resulted in damages to the plaintiff; and (4) that damages proximately resulted from the breach of duty. *Huggins v. Citibank, N.A.,* 585 S.E.2d 275, 276 (S.C. 2003). An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. *Id.* at 276–277. As outlined above, Defendant and Plaintiff dispute whether Plaintiff has sufficiently alleged that Defendant owed a legal duty of care and whether that duty was breached. ECF Nos. 10-

26

1 at 22–25; 16 at 910.  Whether a legal duty of care is owed by the defendant to the plaintiff is a question of law generally determined by the courts.  *See Doe v. Batson*, 345 548 S.E.2d 854, 857 (S.C. 2001).  An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance.  *Carson v. Adgar,* 486 S.E.2d 3 (S.C. 1997).  Ordinarily, the common law imposes no duty on a person to act, but where an act is voluntarily undertaken the actor assumes the duty to use due care.  *Id.* (citing *Russell v. City of Columbia,* 406 S.E.2d 338 (S.C. 1991)).

Defendant and Plaintiff both rely on *Hendricks v. Clemson University*, 578 S.E.2d 711 (S.C. 2003), regarding whether Defendant owed Plaintiff a duty of care that it then breached.  *See* ECF Nos. 10-1 at 23; 16 at 9–10; 17 at 6–7.  In *Hendricks*, a student sued Clemson University for negligence based on allegedly improper academic advisement that rendered him ineligible to play baseball.  578 S.E. 2d at 713.  The South Carolina Court of Appeals found there was at least a factual dispute as to whether Clemson University affirmatively assumed a duty of care by advising the student on which course to take in order obtain eligibility.  *Id.* at 714.  The Supreme Court of South Carolina, however, reversed and held that Clemson University owed no duty of care to the student under the circumstances.  *Id.* at 715.  In finding no duty existed, the Supreme Court of South Carolina analogized the student's claim to other types of "educational malpractice" claims, which would potentially implicate several policy concerns, and also found reliance on the creation of a duty based on Clemson University's "voluntary undertaking to advise" the students to be inapposite as previous case law concerning voluntarily undertakings had involved prevention of physical harm, not economic injury.  *Id*.

In addressing whether Defendant undertook a duty to treat Plaintiff fairly, Plaintiff addresses only the policy concerns raised in *Hendricks* in his attempts to distinguish this action and does not address arguments concerning whether a "voluntary undertaking" by a university created a duty when such undertaking was not made to prevent physical harm, rather than economic injury. ECF No. 16 at 8–10. Indisputably, based on the allegations of Plaintiff's Complaint, any voluntary undertaking by Defendant to treat Plaintiff fairly or follow its own procedures and policies in this action were all related to *economic* injuries. *See* ECF Nos. 1 at 8, 9–10 (making no allegations of physical injury); 16 at 9 (arguing that the nature of his damages would be easy to prove as Defendant "highly values its degrees" and reputational damage is also easily calculable). Given the Supreme Court of South Carolina's hesitancy to extend a duty under such circumstances, this Court likewise finds that no duty existed on the part of Defendant in this action. *See Hendricks*, 578 S.E.2d at 715. The Court is further persuaded that no duty exists based on decisions in other courts in this circuit, which found under similar circumstances that no duty of care existed for universities in conducting sexual misconduct investigations and related proceedings. *See, e.g.*, *Marymount*, 297 F. Supp. 3d at 589–90 (finding that a university had no affirmative "duty to be fair" in disciplinary proceedings); *Leitner v. Liberty Univ., Inc.*, No. 6:19-CV-00029, 2020 WL 7128972, at *10 (W.D. Va. Dec. 4, 2020) (dismissing a plaintiff's negligence claims against a university because she failed to allege it owed her a duty of care "'in hiring and retaining qualified employees' to conduct 'fair' and 'impartial' investigations; . . . to ensure faculty and those 'who hold power and authority to determine a student's guilt or innocence' are 'properly trained' and

'professional[ly] competent'; . . . to protect students from any 'biased' or 'conflicted' judgment of faculty").

Plaintiff argues that Defendant's voluntary undertaking to treat Plaintiff fairly was not the only basis for finding Defendant owed Plaintiff a duty of care.  ECF No. 16 at 10. Plaintiff contends that Defendant also had a duty to "follow its own policies and procedures."  *Id.*  According to Plaintiff, "[t]he policies created a voluntarily undertaken duty to students and the failure to follow those policies was a breach of that duty."  *Id.* However, just like with Defendant's alleged duty to "treat Plaintiff fairly," Plaintiff does not address how Defendant's voluntary undertaking to "follow its own policies" resulted in more than economic injuries.  Thus, for the same reasons outlined above, the Court finds that no duty existed based on Defendant's voluntary undertaking to "follow its own policies."  Accordingly, the Court finds that Plaintiff has failed to sufficiently allege an essential element of his negligence claim—existence of a legal duty—and accordingly Plaintiff's claim for negligence is dismissed.

## D.  Breach of Contract

To state a claim for a breach of contract, a plaintiff must establish: (1) the existence of a contract; (2) breach of that contract; and (3) damages caused by this breach. *Branche Builders, Inc. v. Coggins*, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009).  Plaintiff alleges Defendant breached its contractual obligations to Plaintiff by not fulfilling all obligations as set out in the Policy.  ECF No. 1 at 89.  Plaintiff contends the Policy requires Defendant to (1) not discriminate because of sex or gender; (2) provide false information or interfere with an investigation; (3) keep information regarding respondent in an investigation confidential; and (4) carry out an investigation and proceeding related to

sexual misconduct in an objective manner, without bias towards any party involved. *Id.* at 9. Plaintiff alleges Defendant breached by (1) discriminating against Plaintiff based on his sex or gender; (2) allowing witnesses to give false information; (3) allowing a witness to interfere with the proceedings; (4) allowing breaches of confidentiality; and (5) allowing bias against Plaintiff to affect the investigation. *Id.*

Defendant contends that Plaintiff's breach of contract claim is subject to dismissal because he does not allege the existence of a binding contract or breach. ECF No. 10-1 at 25–29. Defendant argues that the Policy is not a contract under South Carolina law because it is a unilateral document, which, as part of the larger Student Handbook, can be changed by Defendant at any time without consideration for the students. *Id.* at 25–27. Additionally, Defendant contends that Plaintiff has failed to allege specifically what contractual obligations he owes and has fulfilled to Defendant. *Id.* at 27. Defendant asserts that, even assuming a contract has been formed, Plaintiff's allegations concerning breach all involve aspirational policy statements, which are unenforceable under South Carolina law. *Id.* at 28. Defendant further asserts that the conduct that allegedly breached these provisions was all undertaken by third parties, who were not party to the contract. *Id.* at 28–29.

Plaintiff argues that unilateral contracts, like the one allegedly formed between himself and Defendant, are recognized by South Carolina law and that Plaintiff's enrollment and attendance at Furman University constituted performance in reliance on Defendant's representations in the Policy. ECF No. 16 at 10–11. Plaintiff recognizes, however, that a unilateral contract is enforceable where it can be modified with notice. *Id.* at 11. Plaintiff does not argue that the Policy here could only be modified with notice. *Id.*

South Carolina courts have recognized that there is a possibility that the relationship between a student and university is, at least in part, contractual. *Hendricks*, 578 S.E.2d at 716. However, courts applying South Carolina law have also recognized that "[t]o be enforceable in contract, general policy statements must be definitive in nature and promising specific treatment in specific situations." *See Watkins v. Disabilities Bd. of Charleston Cnty.*, 444 F. Supp. 2d 510, 515 (D.S.C. 2006). Further, especially in considering whether a unilateral contract has been formed, courts applying South Carolina law have consistently found an agreement is unenforceable when it contains a unilateral change-in-terms provision without limiting the empowered party in some way, such as by requiring notice be given to the other party. *See, e.g. Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) (holding that, under South Carolina law, an agreement was unenforceable where Hooters reserved the right to modify the rules "without notice," and "[n]othing in the rules even prohibits Hooters from changing the rules in the middle of an arbitration proceeding"); *cf. Fleming v. Borden, Inc.*, 450 S.E.2d 589, 594 (S.C. 1994) (finding a valid and enforceable unilateral contract was formed based on an employee handbook where employer "could not unilaterally amend the contract of employment created by the original handbook" and recognizing that in the context of unilateral contracts, "[u]nder the modern law of contracts, the promisor does not enjoy the unfettered right to modify or terminate a unilateral contract prior to completion"); *King v. PYA/Monarch, Inc.*, 453 S.E.2d 885, 888 (S.C. 1995) ("[A]n implied contract of employment created by an employee handbook may be modified by a subsequent employee handbook provided the employee is given *actual notice* of the modification of the handbook.").

Here, the Student Handbook provides that "[t]he University reserves the right to amend its rules, policies, and procedures at any time."  ECF No. 10-4 at 3.  Plaintiff does not contest that this provision is present in the Student Handbook and applicable to the Policy.  *See* ECF No. 16 at 10–11.  Because the Student Handbook and the Policy may be amended without notice, any terms of an alleged contract between Plaintiff and Defendant based on these documents are not definitive in nature, and, thus, there is no enforceable contract between Plaintiff and Defendant.  *See Fleming*, 450 S.E.2d at 594. The Court finds that Plaintiff has failed to state a claim for breach of contract based on his allegations related to these documents.  Accordingly, Plaintiff's breach of contract claim is dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss [10] is **GRANTED** as to all of Plaintiff's causes of action.  Accordingly, this action is dismissed, and this case is closed.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

January 22, 2025
Spartanburg, South Carolina